EMILY B. CONE v. ALAN W. CONE

No 8018SC234

(Filed 20 January 1981)

**Husband and Wife § 11.1— separation agreement — release of rights to proceeds of sale of entirety property**

In an action by plaintiff against her former husband to recover funds from the sale of entirety property or in the alternative an undivided interest in property purchased by the husband with proceeds from the sale of the entirety property, and for an accounting concerning plaintiff's share of stock in an investment corporation, trial court properly granted summary judgment for defendant where the pleadings and affidavits of the parties showed that the parties, by execution of a separation

agreement and a later amendment, intended to effect a final settlement of their respective rights concerning all property and shares of stocks acquired by the parties during their marriage, and the separation agreement and amendment expressly governed the matters complained of by plaintiff in her complaint and therefore precluded her recovery in this action.

APPEAL by plaintiff from *Lupton, Judge.* Judgment entered 26 October 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 September 1980.

Plaintiff instituted this action against her former husband for an accounting and declaration of a trust. In her first claim for relief, plaintiff alleged that during her marriage to the defendant he used proceeds from the sale of tenancy by the entirety property (hereinafter the Sunset Drive property) to purchase property titled solely in his name (hereinafter the Country Club Road property, sometimes referred to in the documents quoted herein as the Country Club *Drive* property). Plaintiff demanded that the court order defendant to hold in trust for plaintiff an undivided interest in the Country Club Road property commensurate with her contribution to the purchase of that property through her share of the proceeds from sale of the Sunset Drive property. In the alternative, plaintiff demanded that defendant pay to plaintiff an amount equal to one half the proceeds from sale of the Sunset Drive property plus interest.

In her second claim for relief, plaintiff alleged that during her marriage to defendant he caused her single share of stock in A & E Investment Corporation, which plaintiff, defendant and a third party incorporated, to become diluted through the issuance of additional shares and two mergers. Plaintiff asserted that defendant, as controlling officer, director and shareholder of each of the three corporations (A & E and the two into which it was merged, namely, Royal-O-Apparel Company and Tareyton Corporation), had a fiduciary duty to protect the rights of plaintiff with respect to the issuance of shares and the mergers of the corporations; and that defendant breached his fiduciary duty to plaintiff. Plaintiff, therefore, demanded that defendant account to the plaintiff concerning the stock and merger transactions and compensate her for the damages she sustained as a result of defendant's breach of fiduciary duty.

In his answer, defendant denied that he caused title to the Country Club Road property to be issued to himself individually in an attempt to deprive plaintiff of her share of the proceeds from sale of the Sunset Drive property. He further denied any breach of fiduciary duty

with respect to the stock and merger transactions. In separate defenses, defendant asserted that by executing a separation agreement on 9 October 1974 and an amendment thereto on 9 April 1976, the parties settled all property rights as against each other. The defendant also asserted that plaintiff waived any right she may have had to subscribe to the capital stock of A & E Investment Company; that she ratified the issuance of said stock to defendant; and that even if plaintiff owned stock in A & E Investment Company, she surrendered such stock at the time A & E merged into Royal-O-Apparel Company. Defendant pleaded both the three and ten year statutes of limitation as bars to all of plaintiff's claims and alleged that plaintiff's complaint failed to state a claim upon which relief might be granted.

Plaintiff and defendant each moved for summary judgment. The trial court granted defendant's motion and denied plaintiff's motion. Plaintiff appeals. Additional facts necessary for consideration of the appeal will be set forth in the opinion.

*John R. Ingle and William Y. Wilkins for plaintiff-appellant.*

*Mary F. Cannon, Z. H. Howerton, Jr. and Luke Wright for defendant-appellee.*

WHICHARD, Judge.

Plaintiff contends the trial court erred in granting defendant's motion for summary judgment and in denying hers. The court properly granted defendant's motion if the pleadings and affidavits demonstrate that no genuine issue as to any material fact exists and that defendant is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56 (c); *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E.2d 823 (1971); *Best v. Perry,* 41 N.C.App. 107, 109, 254 S.E.2d 281, 283 (1979).

The pleadings and affidavits presented by plaintiff allege that she did not receive any of the proceeds from the sale of the Sunset Drive property which the parties held as tenants by the entirety. They also allege that defendant used plaintiff's share of said proceeds to purchase an interest in the Country Club Road property which he placed solely in his name. These facts, standing alone, establish a claim by plaintiff against defendant based upon resulting trust. A resulting trust arises

> when a person becomes invested with a title to real
> property under circumstances which in equity obli-

gate him to hold the title and to exercise his owner-
ship for the benefit of another. Under such circum-
stances equity creates a trust in favor of such other
person commensurate with his interest in the subject
matter. A trust of this sort does not arise from or
depend upon any agreement between the parties. It
results from the fact that one's money has been
invested in land and the conveyance taken in the
name of another.

*Deans v. Deans,* 241 N.C. 1, 6-7, 84 S.E.2d 321, 325 (1954) *quoting from
Teachy v. Gurley,* 214 N.C. 288, 199 S.E. 83 (1938).

Defendant, however, denied plaintiff's allegation that she did
not receive her share of the proceeds from sale of the Sunset Drive
property and denied that he used her money to purchase the interest in
the Country Club Road property. In addition, defendant contended
that plaintiff relinquished any ownership interest she may have had
in the Country Club Road property and any claim she may have had to
the proceeds from sale of the Sunset Drive property when she volun-
tarily executed a separation agreement for the stated purpose of
"adjust[ing] and settl[ing] the differences between them concerning
the individual rights of each and all other questions affecting the
interest of each of them." Defendant contended, therefore, that
regardless of any claim plaintiff may have had against him prior to
execution of the separation agreement, that agreement legally bound
plaintiff and controlled any dispute which arose between the parties
concerning events which took place prior to their separation.

Defendant moved for summary judgment and filed an affidavit
in which he contended:

That by entering into the CONTRACT AND
AGREEMENT OF SEPARATION and the AMEND-
MENT TO CONTRACT AND AGREEMENT OF
SEPARATION, he and the plaintiff adjusted and
settled all of their property rights, each against the
other; that he has complied fully with the terms of the
CONTRACT AND AGREEMENT OF SEPARATION
and the AMENDMENT TO CONTRACT AND
AGREEMENT OF SEPARATION, paying to the
plaintiff all sums of money to which she was or is
entitled, and now the plaintiff has no further claim

Cone v. Cone

whatsoever against him.

Defendant had filed the separation agreement and amendment as exhibits with his answer, and he referred to his answer and exhibits in support of the summary judgment motion. By this motion, defendant forecast evidence which would be available to him at trial which tended to establish his right to judgment as a matter of law. When a party, in a motion for summary judgment, presents an argument or defense supported by facts which would entitle him to judgment as a matter of law, the party opposing the motion "must present a forecast of the evidence which will be available for presentation at trial and which will tend to support his claim for relief." *Best,* 41 N.C.App. at 110, 254 S.E.2d at 284, *citing* 2 McIntosh, N.C. Practice and Procedure § 1660.5 (2d ed., Phillips Supp. 1970). Defendant pleaded the existence of a contract which on its face settled the interests and rights of the parties which arose out of their marriage. He thereby placed the onus on the plaintiff to forecast evidence to establish that the separation agreement did not bar her right to recover. "If the [plaintiff] does not respond . . . with a forecast of evidence which will be available at trial to show that the defending party is not entitled to judgment as a matter of law, summary judgment should be entered in favor of the defending party." *Best,* 41 N.C.App. at 110, 254 S.E.2d at 284.

The law is well established that in the absence of a showing of fraud, mutual mistake, duress, illegality or undue influence in the execution of a contract, a party to an otherwise valid contract cannot avoid its operation. 1 *Williston on Contracts* § 15 at 28 (3d ed. 1957); *see also Financial Services v. Capitol Funds,* 288 N.C. 122, 136, 217 S.E.2d 551, 560 (1975) (mutual mistake of fact); *Chemical Co. v. Rivenbark,* 45 N.C.App. 517, 520, 263 S.E.2d 305, 307 (1980) (fraud, duress); 3 Strong's North Carolina Index, *Cancellation and Recission* § 1 at 5-6 (1976). In her complaint, plaintiff alleged:

> the defendant used the proceeds from the sale of the real property owned by the parties as tenants by the entirety . . . and caused title to the newly acquired real property . . . to be vested in his name only for the purposes of depriving the plaintiff of her equity in the proceeds of said sale of the Sunset Drive residence and her right of ownership as tenant by the entirety of said Country Club Drive residence of the parties.

Although the quoted allegation may have been sufficient to allege

fraud on the part of defendant with respect to the transaction by which he acquired title to the Country Club Road property, the allegation does not charge fraud *in the execution of the separation agreement.* Therefore, plaintiff's *complaint* fails to forecast evidence which would establish that the separation agreement did not terminate her ownership rights in the proceeds from sale of the Sunset Drive property or in the Country Club Road property.

Further, plaintiff's *motion for summary judgment* and supporting affidavit failed to meet defendant's contention that the separation agreement and amendment controlled as to the respective rights and interests of the parties in real property owned or occupied by them during their marriage. The motion and affidavit merely restated the contention set forth in plaintiff's complaint that defendant used the proceeds from tenancy by the entirety property to purchase an interest in real property titled solely in his name. They failed to mention the 1974 agreement and 1976 amendment or to present any reason the agreement and amendment should not control. Rule 9 (b) of the North Carolina Rules of Civil Procedure, G.S. 1A-1, requires that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiff's allegations do not state with particularity any circumstances amounting to fraud, duress or mistake in the execution of the agreement and amendment. Therefore, the trial court properly determined that these documents controlled the disposition of the action.

The North Carolina Supreme Court discussed the interpretation of separation agreements in the case of *Lane v. Scarborough,* 284 N.C. 407, 200 S.E.2d 622 (1973). Justice Sharp (later Chief Justice), speaking for the court, stated the general rule of construction as follows:

> Questions relating to the construction and effect of separation agreements between a husband and wife are ordinarily determined by the same rules which govern the interpretation of contracts generally. Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution. (Citations omitted.)

> "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the

purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.,* 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning. (Citations omitted.)

*Lane,* 284 N.C. at 409-410, 200 S.E.2d at 624. The court must construe the language of the contract according to its ordinary meaning, and in light of the stated purpose of the parties in executing the contract, to ascertain the intention of the parties with respect to particular provisions. In addition, the court may imply terms if the language of the contract and the circumstances surrounding its execution raise an inference that the parties intended the terms implied. As Justice Sharp stated in *Lane,*

"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made." 17 Am. Jur. 2d *Contracts* § 255 at 649 (1964). However, "[n]o meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions." 17 Am. Jur. 2d *Contracts, supra* at 652.

284 N.C. at 410-411, 200 S.E.2d at 625.

In applying these rules of construction to the agreement and

amendment to determine whether by their execution plaintiff relinquished her rights in the properties in question, we find that the parties stated in the preamble the reason for executing the 1974 agreement as follows:

> WHEREAS, the conditions and causes which existed for some time prior to the separation aforesaid still exist, and in all probability the said conditions and causes will continue to exist; and whereas, the parties hereto have decided that it will be for their best interests, and for the best interest of each of them, to make and enter into this contract and agreement in order to adjust and settle the differences between them concerning the individual rights of each and all other questions affecting the interest of each of them . . . .

In the body of the agreement the parties agreed, with respect to two tracts of tenancy by the entirety property not involved here, that plaintiff would execute the documents necessary to vest title solely in defendant or his assigns. With respect to the Country Club Road property the 1974 agreement contained the following provision:

> *FOURTH:* The house and lot at 806 Country Club Drive in the City of Greensboro, North Carolina, now occupied by the parties hereto and owned by the party of the first part [defendant herein] may be used by the party of the second part [plaintiff herein] for a period of two years from the date of this instrument as her residence. The party of the first part shall make available to the party of the second part a sum not to exceed $125,000.00 for the purchase and furnishing of a residence to be owned by the party of the second part and agrees to pay over to the party of the second part said sum at her request. During the two-year period in which the party of the second part may occupy the residence at 806 Country Club Drive, the party of the first part shall pay to the party of the second part the sum of $750.00 per month as a housing allowance. The payment of said sum shall cease when the party of the second part no longer occupies said residence.

The parties amended this portion of the 1974 agreement through the following provision in the 1976 amendment:

> 1. Paragraph or Item Fourth of said Contract and Agree-

ment of Separation dated October 9, 1974, is hereby stricken and cancelled in its entirety, and in lieu thereof there shall be substituted the following Paragraph or Item Fourth:

*Fourth:* The house and lot at 806 Country Club Drive in the City of Greensboro, North Carolina, occupied by the parties hereto prior to October 9, 1974, and now occupied by the party of the second part and owned by the party of the first part, shall be vacated by Emily Bundy Cone, the party of the second part, no later than Thirty (30) days after the party of the first part vacates the Condominium Unit hereinafter described and delivers the keys thereto to the party of the second part. In consideration of the agreement by said party of the second part to vacate the house and lot known as 806 County (sic) Club Drive, said party of the first part does hereby agree (a) to continue to pay all reasonable costs and expenses incurred by the party of the second part for the operation, upkeep, and maintenance of said property until she vacates the premises, but not beyond the expiration of the aforesaid Thirty (30) day period; and (b) to give, grant, convey and confirm unto the party of the second part, contemporaneously with the execution of this instrument, all of his right, title and interest in and to those certain premises described in Condominium Unit Deed dated May 14, 1975, filed May 23, 1975, in Book 2759, Page 450, in the Guilford County Public Registry, as her sole property, subject to any restrictive covenants, easements and rights of way of record, if any, and to that certain Deed of Trust dated May 19, 1975, filed May 23, 1975, from Alan W. Cone to Joseph L. Carlton, Trustee for Winston-Salem Savings & Loan Association in Book 2766, Page 443, which the party of the second part agrees to assume and pay. The party of the first part shall promptly vacate the premises of said Condominium Unit and deliver the keys thereto to the party of the second part. The party of the first part has heretofore made available to the party of the second part the sum of One Hundred Twenty-Five Thousand Dollars ($125,000.00) for the purchase of a certain tract or parcel of real estate, the receipt of which sum is acknowledged by the party of the second part, and the said party of the first part does hereby waive, release and bar himself from any and all

rights in and to any and all of said $125,000.00 or real or personal property into which said sum of money might have been invested and said party of the second part may transfer and convey her interest therein without the joinder of the party of the first part.

The language of the foregoing provisions, apparently agreed upon by the parties with the advice and assistance of counsel, is unambiguous. The parties proposed to settle all "differences between them concerning the individual rights of each and all other questions affecting the interest of each . . . ." The language of the 1974 agreement indicates that plaintiff acknowledged defendant's ownership of the Country Club Road property, if not before the execution of the agreement, at least from that time forward. Plaintiff agreed to possess and occupy the property only temporarily after the separation. In provision *FOURTH* of the agreement plaintiff agreed to relinquish possession of the property to defendant after two years in exchange for defendant's agreement to pay plaintiff $125,000.00 for the purchase of property for her own residence. Later, in the 1976 amendment, plaintiff agreed to vacate the Country Club Road property within 30 days after the occurrence of a stated event, in consideration of defendant's promise to convey to plaintiff certain condominium property. Plaintiff, when she executed the 1976 amendment, acknowledged receipt from defendant of the sum of $125,000.00 for the purchase of real estate. Defendant waived all rights in the $125,000.00 and in all real or personal property into which the sum might have been invested. In light of the stated purpose for the written agreement, and the fact that the parties specifically provided for the possession and transfer of possession of the Country Club Road property in exchange for a payment of money and the conveyance of real property, we find that the parties intended to effect a final settlement of their respective rights in the Country Club Road property, and thus in the proceeds from sale of the Sunset Drive property, by their execution of the 1974 and 1976 documents.

One additional provision in the 1974 agreement further indicates plaintiff's intention to relinquish all such ownership right and interest. The provision, a waiver and release, is as follows:

*TWELFTH*: That, except as hereinabove provided, the party of the second part hereby waives, releases and bars

herself from any and all rights in and to any and all real estate or personal property now owned or hereafter owned or acquired by the party of the first part, and henceforth the party of the first part may convey his real estate and personal property without the joinder of the party of the second part.

Plaintiff by this provision expressly waived any rights in and to the Country Club Road property, which she had acknowledged earlier in the agreement to have been "owned by" the defendant.

With respect to stocks owned by each of the parties, the original separation agreement provided:

*NINTH:* That the party of the first part has heretofore made certain gifts of stocks, bonds and securities to the party of the second part, which party of the second part shall retain as her own property free and clear of any claims by the party of the first part. The party of the first part shall give to the party of the second part a true and accurate accounting of said stocks, bonds and securities within ten (10) days after the date of this Agreement.

The 1976 amendment provided:

4. It is mutually understood and agreed that the said Contract and Agreement of Separation dated October 9, 1974, is hereby amended by adding thereto the following new Paragraphs or items:

*Sixteenth:* That the party of the second part is owner of Three Hundred Fifty (350) shares of the common stock of Tareyton Corporation, a North Carolina corporation with its principal office in Greensboro, North Carolina; that the party of the first part on the date of execution of this Agreement is in control of said Tareyton Corporation by ownership of a majority interest in the common stock therein; that by this Agreement, said party of the first part agrees, at the election of said party of the second part, to do either of the following: (1) to purchase said Three Hundred Fifty (350) shares of the common stock of Tareyton Corporation from said party of the second part at the book value per share as shown on the financial statement certified to by

the corporation's accounting firm as of the last day of the fiscal period immediately preceding the time of such election; or (2) to protect the value of said Three Hundred Fifty (350) shares owned by the party of the second part by agreeing herein that, in the event of sale by said party of the first part, directly or indirectly, of his controlling interest in said Tareyton Corporation, he will afford the party of the second part full opportunity to dispose of her shares at the same time and in the same manner as the party of the first part disposes of his shares, and, if she elects to do so, the party of the first part will take such action as necessary in order for the party of the second part to dispose of her shares in Tareyton Corporation, on the same terms and conditions and for the same price per share, as the said party of the first part disposes of his own shares in said Tareyton Corporation.

As with the claims regarding real property, the intention of the parties at the time they executed the 1974 and 1976 documents, as expressed by the unambiguous language of those documents, was to settle finally all disputes regarding the shares of stock acquired by the parties during their marriage.

Therefore, we hold that plaintiff and defendant intended, when they executed the separation agreement and amendment, that the agreement and amendment would operate as a final settlement of all rights and claims which arose or might have arisen during or as a result of their marital relationship. We further hold that the 1974 contract and agreement of separation and the 1976 amendment expressly governed the matters complained of by plaintiff in her complaint and precluded her recovery in this action. Thus, the trial court properly entered summary judgment for defendant.

We note that the 1976 amendment contained the following provision:

*Twenty First:* Each of the parties shall, from time to time, at the request of the other, execute, acknowledge, and deliver to the other party any and all further instruments that may be reasonably required to give full force and effect to the provisions of this amended Agreement.

Plaintiff agreed by this provision to execute, acknowledge and deliver

tŏ defendant any instrument necessary to effect the transfer of any interest she had during the marriage in the Country Club Road property.

Because of our holding that the separation agreement and amendment settled all claims between plaintiff and defendant, we need not discuss whether the statutes of limitation barred plaintiff's claims.

The judgment of the trial court is

Affirmed.

Judges HEDRICK and HILL concur.