JIMMIE ROGERS and SHELDON ROGERS in their Individual Capacity and Jimmie Rogers, as the Executor on behalf of The Estate of Patricia Rogers-Milton, Plaintiffs,
v.
LIFE PARTNERS, INC., STERLING TRUST CO., and BARBARA ALEXANDER, M.D., Defendants.
No. COA07-700
Court of Appeals of North Carolina.
Filed December 18, 2007
This case not for publication
James E. Rogers, for plaintiffs-appellants.
MacRae, Perry & MacRae, L.L.P., by James C. MacRae, Jr., for Life Partners, Inc. and Sterling Trust Co., defendants-appellees.
JACKSON, Judge.
Jimmie and Sheldon Rogers ("plaintiffs") appeal the trial court's grant of summary judgment in favor of Life Partners, Inc. and Sterling Trust Co. ("defendants"). For the reasons stated below, we affirm.
Patricia Rogers-Milton ("Rogers-Milton") was plaintiffs' mother. In 1984, Rogers-Milton designated plaintiffs as beneficiaries of a life insurance policy she had obtained as a result of her employment with the United States Postal Service. On 4 and 5 November 1998, Rogers-Milton entered into a viatical settlement with defendants. Pursuant to this settlement, Rogers-Milton assigned her life insurance policy to Life Partners, Inc. and changed the beneficiary designation to Sterling Trust Company. She signed two contemporaneous affidavits in which she stated she was mentally competent and had had an opportunity to seek legal counsel. In return, Rogers-Milton received $74,848.50. Rogers-Milton's affidavits indicated that she was aware that pursuant to the settlement, the former beneficiaries of the life insurance policy would no longer have any interest in the policy.
Rogers-Milton took numerous medications, including narcotics for pain, throughout her many illnesses. From 1998 until her death on 13 May 2003, Rogers-Milton's physical and mental health declined. At times, she would not recall why she had called someone on the telephone or be able to carry on a coherent conversation. However, she lived independently, paid her bills, drove herself to doctors' appointments, discussed her medical conditions with her doctors, and otherwise conducted her personal and financial affairs.
On 10 June 2002, Rogers-Milton executed a will. Plaintiffs believed she was of sound mind and body to make a will. The will was probated in Scotland County after her death. Three weeks prior to her death, as well as at other times since 1998, Rogers-Milton had discussed her life insurance policy and the fact that plaintiffs were beneficiaries of that policy.
After Rogers-Milton's death in 2003, plaintiffs and defendants both made claims against the life insurance policy. Plaintiffs brought the instant action on 3 December 2003, alleging undue influence, fraud, and unfair and deceptive trade practices. As a result of the conflicting claims against the policy, MetLife  the insurer  filed a claim for interpleader in the United States District Court for the Middle District of North Carolina, seeking to deposit the proceeds of the policy into the court in full satisfaction and discharge of its liability.
Defendants filed a motion for summary judgment in the federal action, which was granted after plaintiffs failed to respond. This order subsequently was set aside due to a failure of notice, but not before the life insurance proceeds had been distributed to defendants. Defendants were ordered to hold the proceeds in trust until resolution of the state action.
Defendants filed a motion for summary judgment in the instant action on 1 March 2006, attaching various documents relating to the viatical settlement, including Rogers-Milton's affidavits, and a letter signed by one of Rogers-Milton's attending physicians dated 2 December 1998 attesting to Rogers-Milton's mental competence. Defendants' motion was heard 5 February 2007 and granted in defendants' favor by order filed 20 February 2007. Plaintiffs appeal. We first note that plaintiffs' brief fails to comply fully with the North Carolina Rules of Appellate Procedure. Rule 28(b) governs the content of appellants' brief, and requires the inclusion of "[a] statement of the grounds for appellate review. Such statement shall include citation of the statute or statutes permitting appellate review." N.C. R. App. P. 28(b)(4) (2007). There is no such statement in plaintiffs' brief, much less citation to the statute or statutes permitting our review.
"It is well settled that the Rules of Appellate Procedure 'are mandatory and not directory.'" State v. Hart, 361 N.C. 309, 311, 644 S.E.2d 201, 202 (2007) (quoting Reep v. Beck, 360 N.C. 34, 38, 619 S.E.2d 497, 500 (2005)). Dismissal of an appeal or an assignment of error is not always required, however, and "some other sanction may be appropriate, pursuant to Rule 25(b) or Rule 34 of the Rules of Appellate Procedure." Id. Therefore, as plaintiffs' appellate rules violations are not so egregious as to warrant dismissal, pursuant to Rule 34(b), we elect to order plaintiffs' counsel to pay the printing costs of this appeal. See McKinley Bldg. Corp. v. Alvis, ___ N.C. App. ___, ___, 645 S.E.2d 219, 222 (2007); Caldwell v. Branch, ___ N.C. App. ___, ___, 638 S.E.2d 552, 555, disc. rev. denied, ___ N.C. ___, ___ S.E.2d ___ (2007). We instruct the Clerk of this Court to enter an order accordingly.
Plaintiffs make two arguments with respect to the grant of summary judgment in defendants' favor. First, they argue that summary judgment was granted erroneously because they can satisfy the elements of a claim for unfair and deceptive trade practices pursuant to Texas law. Second, they argue that the trial court did not consider the evidence in the light most favorable to the non-moving party. We disagree.
On appeal to this Court, we review an order allowing summary judgment de novo. Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citing Summey v. Barker, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003)). The motion should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). When considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party. Summey, 357 N.C. at 496, 586 S.E.2d at 249 (citing Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). A motion for summary judgment should be denied if there is any evidence of a genuine issue of material fact. Howerton, 358 N.C. at 471, 597 S.E.2d at 694.
Once the moving party presents a defense supported by facts that would entitle him to judgment as a matter of law, the burden shifts to the party opposing the motion to come forward with a forecast of the evidence that would tend to support his claim for relief. Cone v. Cone, 50 N.C. App. 343, 347, 274 S.E.2d 341, 343-44, disc. rev. denied, 302 N.C. 296, 280 S.E.2d 440 (1981) (citing Best v. Perry, 41 N.C. App. 107, 110, 254 S.E.2d 281, 284 (1979)). The non-moving party cannot rely upon the mere allegations or denials of his pleading; his affidavits and other supporting evidence "must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2005). Should the opposing party fail to respond with a forecast of evidence showing that the movant is not entitled to judgment as a matter of law, summary judgment should be entered in favor of the moving party. Best, 41 N.C. App. at 110, 254 S.E.2d at 284.
Plaintiffs contend that there is a genuine issue of material fact as to their unfair and deceptive trade practices claim, and that Texas law applies. Defendants contend otherwise, and that North Carolina law should apply. Before turning to this conflicts of law question, we must address the threshold question of Rogers-Milton's mental capacity to enter into the viatical settlement. Plaintiffs allege that Rogers-Milton was not competent to enter into the viatical settlement with defendants, and that defendants took advantage of her, which constituted an unfair and deceptive trade practice. Absent a genuine issue of material fact as to Rogers-Milton's mental capacity, defendants would have a complete defense to plaintiffs' unfair and deceptive trade practices claim.
This Court long has recognized that "a person has sufficient mental capacity to make a contract if he knows what he is about." Cameron v. Power Co., 138 N.C. 365, 367, 50 S.E. 695 (1905) (citations omitted).
[T]he measure of [a person's] capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.
Sprinkle v. Wellborn, 140 N.C. 163, 181, 52 S.E. 666, 672 (1905).
In support of their motion for summary judgment, defendants offered two affidavits signed by Rogers-Milton herself, attesting to her mental capacity, and a letter of competency signed by Rogers-Milton's attending physician. Rogers-Milton's affidavits stated:
1. My name is PATRICIA R. MILTON. I am above the age of twenty-one, am mentally competent, have had the opportunity to receive the assistance of legal counsel in making this affidavit and swear that the averments made herein are true and correct.
2. Because of my medical condition and financial needs, I have entered into a viatical settlement of my life insurance . . . whereby I have conveyed and assigned all of my right, title, and interest in said policy to the clients of Life Partners, Inc.
3. I understand and am fully aware that this transaction will result in the former beneficiaries under this policy, being changed . . . . I further understand and am fully aware that the above-referenced former beneficiaries shall hereafter neither have nor retain any interest whatsoever in said policy.
4. I have entered this transaction after much consideration and after the opportunity to consult with independent counsel. I feel that this transaction is the best method to meet my current needs[.]
Rogers-Milton personally appeared before an authorized notary public, was duly sworn, and signed both affidavits on 5 November 1998. Defendants also offered a letter signed by Barbara D. Alexander, M.D. ("Dr. Alexander") on 2 December 1998. This letter stated, "I am the attending Physician for Patricia Milton (the patient). I have determined the patient is of sound mind and competent to manage and direct his [sic] personal affairs."
These three documents tend to show that at the time Rogers-Milton entered into the viatical settlement, she understood the nature and consequences of the settlement. Taken as true, these documents would defeat plaintiffs' claim that defendants took advantage of Rogers-Milton. Having forecast evidence that would entitle defendants to judgment as a matter of law, it was incumbent upon plaintiffs to forecast specific evidence tending to support their claim that Rogers-Milton lacked the mental capacity required to enter into the viatical settlement in November 1998.
The record before us does not include a response in opposition to defendants' motion for summary judgment, with supporting affidavits. It also does not include various other documents referenced in the parties' discovery documents which were before the trial court, such as Rogers-Milton's medical records and estate file. Our review is limited to what is presented to us in the record on appeal, the verbatim transcript of proceedings, and other items filed pursuant to Rule 9 of our Appellate Rules. N.C. R. App. P. 9(a) (2007).
In their brief, plaintiffs rely on their own deposition testimony and the affidavit of Peggy McRavin ("McRavin") in support of their contention that Rogers-Milton was not mentally competent in November 1998.
Although Sheldon Rogers' testimony suggested that Rogers-Milton had periods when she may not have been mentally competent, his testimony did not specifically address the period immediately surrounding the time of the viatical settlement. Evidence of Rogers-Milton's mental state at "other, remote times is not relevant." See Hardee v. Hardee, 309 N.C. 753, 762, 309 S.E.2d 243, 248 (1983) (referring to mental capacity to execute a deed). He testified that in 1998 Rogers-Milton lived independently, paid her bills, drove herself to the doctor, discussed her medical conditions with her doctor, and generally conducted her own personal and financial affairs. He testified that Rogers-Milton took ten to fifteen pills a day for migraines, for allergies, "for depression, for sleeping, for getting up, for pain all day, for diabetes, for her neck, [and] for her toes[,]" as well as vitamins. Although he was able to identify morphine as one of her medications, he did not state the types or dosages of mind-altering medications she took on a regular basis in late October or early November 1998.
He testified that Rogers-Milton had been hospitalized for "mental illness issues," but he did not know when, where, or for what. He stated that in 1998, Rogers-Milton was told she had only three to four months to live,[1] at which time she told plaintiffs about her insurance policy naming them as beneficiaries. However, he could not recall when in 1998 this conversation took place, but that it was repeated several times before her death in 2003. He said Rogers-Milton had good days and bad days; she also would have good weeks. He stated that he was not sure if Rogers-Milton was competent or not because he was not with her, but had he been there, he might agree that she was competent.
He testified that the evidence he had that Rogers-Milton did not understand the consequences of her actions in early November 1998 was in the medical records, but those medical records are not before this Court. Although he personally had spoken to doctors about his mother's condition "from the time that they . . . gave her three months to live . . . until she died[,]" he could not remember their names. He remembered speaking with Dr. Alexander, but not as frequently as some of his mother's other doctors. He stated that from 1998 until the day she died, there were times that she would not remember conversations; however, he did not recount any specific incidents in late October or early November 1998.
Jimmie Rogers' testimony similarly was lacking in specifics regarding the period immediately surrounding the viatical settlement. He testified that Rogers-Milton was diagnosed with cancer after 1998, and given a terminal diagnosis only two years prior to her death. He never knew she had received almost $75,000; and she never made large purchases that would make him suspicious.He knew that she had had an aneurism, but was not sure when. He did not think she had experienced any brain damage as a result of the aneurism. At the time Rogers-Milton prepared her will, he believed she was of sound mind.
He had no personal knowledge of what medications she may have been on at the time she discussed the viatical settlement and signed the various documents. Her competency depended on the time of day or how long it had been since she had taken medication. His evidence of her failure to understand the settlement was that she had discussed her life insurance policy in 2002 or 2003 as though she was unaware of the settlement. He stated that Rogers-Milton's medical records would reflect her condition at the time of the settlement. He had never been told by a doctor that she was unable to handle her own affairs.
McRavin stated in her affidavit that during the time period of 5 November 1998 Rogers-Milton was often heavily medicated, taking seventeen different pills daily. Rogers-Milton often forgot who she had called on the telephone or why she had called. On several occasions Rogers-Milton fell asleep on the telephone or her conversation would be incoherent. However, the affidavit does not indicate whether the time period was within a few weeks of 5 November 1998 or within a few months or even years of that date.
Pursuant to Rule 56(e) of the North Carolina Rules of Civil Procedure, plaintiffs were required to set forth specific facts addressing Rogers-Milton's lack of mental capacity on or about 5 November 1998. None of plaintiffs' facts tend to show that she did not understand the nature and consequences of what she was doing  that she was transferring her life insurance proceeds at death to defendants in exchange for almost $75,000, to the exclusion of plaintiffs  thus evidencing a lack of mental capacity to enter into the viatical settlement in early November 1998.
Because plaintiffs failed to specifically rebut defendant's evidence by establishing that on or about 5 November 1998, Rogers-Milton lacked the necessary mental capacity to enter into the viatical settlement, there is no basis for plaintiffs' unfair and deceptive trade practices claim. Therefore, summary judgment in defendant's favor was proper.
Because we have held that plaintiffs have failed to come forward with evidence sufficient to rebut defendants' showing, we need not decide whether Texas or North Carolina law governs.
Affirmed.
Judges TYSON and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] Defendants stated in a response to an interrogatory that at the time the viatical settlement was entered into, Rogers-Milton's life expectancy was 36-48 months, as determined by a qualified physician. She lived 54 months from the time of settlement.