(844 P.2d 768)

No. 68,022

NEW DIMENSIONS PRODUCTS, INC., *Appellee,* v. FLAMBEAU
CORPORATION, *Appellant.*

Opinion
filed January 15, 1993.

*Ross A. Hollander* and *Rodney K. Murrow,* of Martin, Churchill, Overman, Hill & Cole, Chartered, of Wichita, for the appellant.

*Alisa M. Arst,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, for the appellee.

Before LARSON, P.J., LEWIS, J., and BARRY A. BENNINGTON, District Judge, assigned.

LEWIS, J.: Flambeau Corporation (appellant) appeals various decisions of the trial court adverse to its interests. After careful review, we affirm.

Robert and Helen Bergkamp invented and patented a recipe organizer. They formed New Dimensions Products, Inc., (appellee) to develop and sell their product. This lawsuit arises out of the exclusive licensing agreement entered into by the parties. Appellee contends that appellant breached this agreement in several respects by underpayment of royalties due and owing and by the failure to carry out various other contractual considerations.

The exclusive agreement between the parties dates back to 1980. Pursuant to the original agreement, not at issue in this matter, appellant was to manufacture and sell the recipe organizer. Appellee was to receive a royalty payment amounting to eight percent of the net sales. Appellant also took possession of the steel mold from which the recipe organizers were manufactured, while appellee retained ownership of that item.

In October of 1985, a new exclusive licensing agreement was entered into between the parties. This agreement incorporated nearly all of the provisions of the original agreement but reduced the royalty payment owed by appellant from eight percent of net sales to four percent of net sales. This action was instituted to recover damages for breach of the 1985 agreement by appellee.

The 1985 agreement required the payment of royalties as stated above and required appellant to make monthly royalty reports and monthly payments of royalties to appellee. The evidence shows that, at best, these monthly reports and payments were made quarterly and then only after prodding phone calls from Helen Bergkamp.

The agreement in question required appellant to establish a "tooling account." This account was to be funded by a payment of one percent of net sales by appellant and was to be used as necessary to repair the steel mold from which the recipe organizers were manufactured. The agreement provided that any amounts in the tooling account on hand when the agreement was terminated would become the property of appellee. The evidence is uncontradicted that appellant did not establish or fund the tooling account as required. The agreement required monthly

reports of the tooling account deposits. Appellant made none of the required reports.

The relationship between the parties began to unravel in 1989. At one point, the Miles Kimball Company wrote to appellant seeking to order recipe organizers. In response, appellant advised Miles Kimball that it no longer handled the product and suggested that inquiries be made directly to Helen Bergkamp. At this time, appellant had never advised appellee it would no longer sell the recipe organizers. The first inkling Helen Bergkamp had of this decision occurred when Miles Kimball informed her of appellant's letter. Helen Bergkamp then wrote to appellant, who told her that sales of the recipe organizers were less than satisfactory and that it had 424 recipe organizers in stock. In this letter, appellant advised appellee that it could purchase the recipe organizers in stock, along with the company's inventory, for a cash payment of $33,172.43. Helen Bergkamp declined the offer.

By 1991, royalty payments had all but ceased. Helen Bergkamp sensed that appellant was being less than honest in paying royalties. She recruited her daughter to write appellant and order five recipe organizers. Appellant responded by selling Helen Bergkamp's daughter five recipe organizers, three of which it called "Coupon Organizers." Helen Bergkamp's daughter bought and paid for these items. Appellee received no royalty payments on this sale.

Indeed, it appears appellant sold a number of recipe organizers without paying the required royalty to appellee. Appellant admits this fact, but states it does not know how much it owes appellee. In addition, appellant sold recipe organizers which it called "Coupon Organizers" and "Country Love Organizers." The Coupon Organizer and the Country Love Organizer were both made from the original steel mold. No royalties were paid by appellant to appellee for sales of the Coupon Organizer or the Country Love Organizer.

The suit instituted by appellee sought to recover unpaid royalties and the amount due on the "tooling account," which had never been established by appellant. The matter was tried to the trial court, which awarded appellee total damages of $35,297.23.

Under the 1985 agreement, appellee agreed to purchase from appellant the "inventory" on hand used to manufacture the recipe

organizers when the contract was terminated. Appellant claimed the value of its inventory was $32,519.14 and sought to set off that amount against any damages recovered by appellee. The trial court denied the remedy of setoff as asserted by appellee.

During the discovery phase of this action, appellee sought to discover all records showing sales of recipe organizers by appellant's outlet stores. Appellant consistently denied it had any such records and stated it had produced all records in its possession. On the first day of trial, appellant admitted it had not been truthful during discovery. It admitted it did have records of sales from its outlet stores. The trial court then recessed the trial and ordered appellant to produce the records which it had earlier denied were available.

After considering the newly discovered evidence, the trial court denied appellant the right to introduce such evidence and held that appellee could use any of the evidence it desired. The trial court also ordered appellant to pay sanctions of $5,000 and attorney fees of $2,400.

Appellant appeals the trial court's award of damages, the denial of its setoff, and the sanctions imposed.

## DAMAGES

This was an unusual and complex factual situation. The trial court, in seeking to resolve this situation, made 126 findings of fact and conclusions of law. Appellant contends that the damage award made by the trial court for unpaid royalties was not supported by substantial competent evidence.

Appellant argues that the evidence offered to establish damages and the method used by the trial court to compute the damages was speculative and unreliable. We review this issue in the light of the circumstances which existed at the time of trial.

Appellant admits it breached its agreement with appellee and did not pay all royalties owed. It also insists it kept no production records, does not know how many recipe organizers it sold, and is not certain what it owes appellee for underpaid royalties, other than conceding it owes $118.33. This is an admission by appellant that it breached the agreement. The issue is not whether appellee has been damaged; it is how much it has been damaged. Virtually all the evidence as to how many recipe organizers were manu-

factured and sold is under the exclusive control of appellant. Appellee had no way to determine how many recipe organizers were manufactured and sold. The only damages capable of clear and convincing proof are those admitted by appellee. Proof of the balance of the unpaid royalties can only be made by use of such documentation as appellant admits was available and was willing to disclose. We keep in mind that appellant still denies it has any production records and denied until the trial began that it had any sales records.

The method used by appellee to prove its damages is based on evidence which falls short of being absolute. In addition, this evidence requires that the trial court make certain inferences and assumptions in calculating the unpaid royalties owed. The question is whether that evidence was sufficient under the circumstances.

Appellee's proof of its damages rested on three exhibits. Exhibit No. 20 was a letter from appellant to Helen Bergkamp which indicated that, on March 16, 1989, appellant had 424 gold recipe organizers in its inventory. Exhibit No. 26 was an internal memorandum prepared by appellant. This document indicates that, on March 31, 1990, appellant had 299 recipe organizers on hand and that, on June 1, 1990, that number had been reduced to 140. Exhibit No. 27 was another document prepared by appellant, and it showed that on November 20, 1989, there were 375 gold recipe organizers in appellant's inventory. As pointed out earlier, there were no production or sales records available.

The exhibits noted above show that, between March 16, 1989, and June 1, 1991, appellant failed to pay royalties on 83 percent of its sales of recipe organizers. The trial court then calculated appellee's damages as follows:

"71. Between March 16, 1989 and June 1991, defendant's inventory of gold Recipe Organizers was reduced by 284 while sales of only 48 were reported to plaintiff during that same time. Consequently, the Court finds that defendant did not report to plaintiff the sale of 236 gold Recipe Organizers, or 83% of the total sales of 284, between March 16, 1989 and June 1991.

. . . .

"77. The Court finds with reasonable certainty, under the facts and circumstances of this case, that defendant under-reported all sales to plaintiff

since 1985 in the same manner that it under reported sales to plaintiff between March 16, 1989 and June 1, 1991. . . .

"78. Defendant reported sales to plaintiff in the amount of $104,055.41 since November of 1985. . . .

"79. The Court finds with reasonable certainty under the facts and circumstances of this case, that the actual sales of the Recipe Organizers since November 1985 is $615,008.29 and that the total royalty due plaintiff from defendant is $24,600.33. . . .

. . . .

"81. Prejudgment interest in the amount of 10% on the amount of royalty outstanding and unpaid to plaintiff totals $8,717.77."

Appellant argues that the evidence to support these findings and the method used to arrive at the damages is speculative and unreliable. However one may wish to categorize the evidence, it was the best and only evidence available. The analysis by the trial court was certainly designed to make appellee whole in the face of admitted and repeated breaches of agreement by appellant.

This was a complex question of fact which was presented to the trial court. The trial court resolved that question of fact on the best evidence available. Our scope of review in cases of this nature is well known.

" 'Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. [Citations omitted.] Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, "substantial evidence" is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]'

"This court's review of conclusions of law is unlimited. *U. S. D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 140, 785 P.2d 993 (1990)." *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991).

The Supreme Court in *Gillespie* also held that "[t]he purpose of awarding damages is to make the injured party whole." 250 Kan. 124, Syl. ¶ 8. "[I]n assessing damages it is within the discretion of the trial court to apply equitable standards in order that the plaintiff may be made whole." 250 Kan. 124, Syl. ¶ 9.

In determining whether the trial court's findings are supported by substantial competent evidence, we intend to examine the peculiar factual situation presented to the trial court. We think

it is significant that appellee's evidence was the best evidence obtainable and that a great deal of potentially relevant evidence was either unavailable or was not disclosed by appellant. Under these circumstances, the goal was to make appellee whole. In *Gillespie,* the trial court fashioned a method of awarding damages in a complex case in which many records were simply unavailable. Both parties to that appeal were unhappy, and the Supreme Court, in affirming the trial court, stated:

"In assessing damages it is within the discretion of the trial court to apply equitable standards in order that the plaintiff may be made whole. *Seaman U.S.D. No. 345 v. Casson Constr. Co.,* 3 Kan. App. 2d 289, Syl. ¶ 2, 594 P.2d 241 (1979). *The trial court's goal, appropriately, was to make the plaintiffs whole. State ex rel. Stephan v. Wolfenbarger & McCulley, P.A.,* 236 Kan. 183, 189, 690 P.2d 380 (1984). *In this unusual and complex factual situation, the trial court fashioned a remedy to accomplish this goal.* Our test on appellate review is not whether the remedy fashioned is the best remedy that could have been devised, but whether the remedy so fashioned is erroneous as a matter of law or constitutes a breach of trial court discretion. After careful consideration and review, we find no error or abuse of discretion in the computation of damages." (Emphasis added.) 250 Kan. at 143.

We think the same logic can be applied to the instant matter. Appellant admits multiple repeated breaches of contract, admits it owes appellee money, but denies it knows how much, and insists it has no records to shed light on the subject. Appellee is obviously entitled to be made whole, but the trail of evidence is obscured by appellant's denial of records and its failure to come forward with anything to shed light on the issue. Under these difficult circumstances, the trial court fashioned a formula from the only evidence available, and we cannot say that the remedy fashioned by the trial court was reversible error. If the approach taken seems a bit harsh or punitive, the answer may be found in appellant's conduct.

"The main thrust of appellant's argument as to damages is directed at the insufficiency of the evidence to support the judgment. The measure of damages recoverable for a breach of contract is limited to such as may fairly be considered as arising in the usual course of things from the breach itself, or as may reasonably be assumed to have been within the contemplation of the parties as the probable result of such a breach. [Citations omitted.] The evidence allowed to support damages for breach of contract *is the best evidence obtainable under the circumstances of the case to show the natural and ordinary consequences of the breach and which will enable the court*

or the jury to arrive at a reasonable estimate of the loss which resulted. (*Gartner v. Missimer,* 178 Kan. 566, 570, 290 P.2d 827; *Vanguard Insurance Company v. Connett,* 270 F.2d 868 [10th CA].)" *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* 212 Kan. 730, 738, 512 P.2d 379 (1973).

In *Vanguard Insurance Company v. Connett,* 270 F.2d 868 (10th Cir. 1959), the Tenth Circuit, applying Kansas law, said:

"Where the cause and existence of damages has been established with requisite certainty, recovery will not be denied because such damages are difficult to ascertain. While the damages may not be determined by mere speculation or guess, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference. A reasonable basis of computation and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss is sufficient." 270 F.2d at 870.

The cases cited above support our conclusion that the trial court's award of damages was supported by substantial competent evidence. The record very clearly indicates that it was appellant who had exclusive control over all the records concerning production, sales, and costs of materials. Appellant consistently denied those records existed at the trial and steadfastly refused to produce them. Under these circumstances, proof of damages was difficult. This difficulty was created by appellant, and appellee should not be penalized by appellant's failure to either keep the necessary records or to produce them when asked to do so. The only method offered to determine the amount of unpaid royalties in this case was put forward by appellee. The trial court concluded:

"The analysis, of comparing the reduction of inventory with the reported sales during the only time frame in which the inventory is known, to create a ratio of unreported to reported sales, and applying the same ratio to other time frames provides a reasonable basis for awarding damages under the circumstances."

We agree with the trial court's comments set forth above. We conclude the evidence offered by the appellee was the best evidence obtainable under the circumstances. The trial court's award of damages was supported by substantial competent evidence and is affirmed.

## TOOLING ACCOUNT

Appellant argues that the evidence used to determine the dam-

age award for failing to maintain the tooling account was not supported by substantial competent evidence. We disagree.

The trial court determined that the total sales of recipe organizers was $615,008.29. Appellant had promised to set aside one percent of total sales for the tooling account. Accordingly, the trial court held that appellee was entitled to damages of $6,150.08 by reason of the termination and breach of the 1985 agreement.

Appellant's argument concerning the tooling account is precisely the same argument it made concerning the damages awarded for unpaid royalties. We conclude that the award of damages on the tooling account is affirmed for the reasons set forth above.

## DISCOVERY SANCTIONS

As pointed out earlier in this opinion, the trial court ordered appellant to pay sanctions to appellee in the amount of $5,000 and attorney fees in the amount of $2,400. These sanctions were the result of admitted discovery violations by appellant which delayed the trial and which the trial court found were abusive.

We have reviewed the record and find nothing which requires a reversal of the trial court's award of sanctions. We note the trial court apparently misspoke itself in stating it was awarding sanctions under K.S.A. 60-211. We assume the trial court meant to award sanctions under K.S.A. 60-237 and simply recited the wrong statute. In any event, the intentional or inadvertent reference to 60-211 does not require us to reverse the sanctions imposed.

Appellant's actions were inexcusable and delayed the trial by several days. Such non-action cannot be ignored by a trial court if it is to keep proper control over a busy trial docket. The use of sanctions to punish violations of discovery orders is an appropriate way to maintain that docket.

The award of sanctions, including attorney fees, for discovery violations is within the discretion of the trial court. See *Schulze v. Coykendall,* 218 Kan. 653, 658, 545 P.2d 392 (1976); *Dickinson, Inc. v. Balcor Income Properties Ltd.,* 12 Kan. App. 2d 395, 401, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). There is no indication in the record that the trial court abused its

discretion in the amount of sanctions it awarded, and its action is affirmed.

## ADMISSION OF NEWLY PRODUCED EVIDENCE

After the trial court had an opportunity to review the newly reported discovery documents finally disclosed by appellant it ruled: "[A]ny and all materials that have been discovered due to the court's order after the plaintiff rested in this case only evidence that supports the plaintiff's position will be allowed to be presented. All other will be denied." Pursuant to that order, the trial court refused to allow appellant to offer any of the evidence to support its position. Appellant argues that the trial court's orders were erroneous and require a reversal of the decision. We disagree.

"The admission of exhibits not previously disclosed . . . is discretionary with the trial court. Discretion is abused only when no reasonable man would take the view adopted by the trial court. [Citation omitted.] The exercise of judicial discretion requires that a judge have proper regard for what is just and fair under the existing circumstances, and that he not act in an arbitrary fashion or unreasonable manner. [Citations omitted.]" *State Farm Fire & Cas. Co. v. Liggett,* 236 Kan. 120, 124-25, 689 P.2d 1187 (1984).

We see no evidence that the trial court abused its discretion in ruling on the admission of the newly discovered documents produced by appellee.

In addition, appellant made no proffer to show what evidence might have been presented or how it would have helped its position. K.S.A. 60-405 states:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

See *Salem v. Salem,* 214 Kan. 828, 832, 522 P.2d 336 (1974).

## SETOFF

Appellant sought to offset any damages awarded to appellee by the amount it claimed was owed to it by appellee to purchase inventory items. Appellant sought to prove that it had $34,407.54

of such inventory on hand. The trial court denied the request for a setoff. Appellant contends such denial was reversible error. We disagree.

The trial court's basis for denying the setoff relief was as follows:

"Flambeau Corporation now seeks set off from plaintiff in an amount to purchase the inventory and materials it claimed were for the production of the Recipe Organizer. Defendant should not be allowed to benefit from this breach of contract. The Doctrine of Clean Hands provides, in substance, that no party can obtain affirmative relief with respect to a transaction in which he has, himself, been guilty of inequitable conduct. [Citations omitted.] Here, defendant has breached the Exclusive Licensing Agreement in many ways and seeks affirmative relief, set off. Flambeau Corporation should not be rewarded for its breach by a set off from the damages caused by its own wrongful conduct. [Citation omitted.]"

We agree with the trial court's reasoning. "The clean hands doctrine provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct." *Miller v. Miller,* 222 Kan. 317, 319, 564 P.2d 524 (1977); *Green v. Higgins,* 217 Kan. 217, 220, 535 P.2d 446 (1975).

Appellant is not a candidate for equitable relief. It has admittedly breached its agreement with appellee in several respects. Appellant has withheld royalty payments due under the agreement. Appellant failed to establish and fund a tooling account required by the agreement. Appellant did not make written reports nor pay royalties regularly as required by the agreement. Appellant was guilty of one of the worst cases of discovery abuse the trial court stated it had ever witnessed. Under all of these circumstances, certainly appellant did not come to the trial court with clean hands, and the trial court did not err in refusing to provide to appellant relief by way of the doctrine of setoff.

The trial court alternatively denied appellant's request for a setoff for the reasons set forth in paragraphs 113, 115, 116, 117, 118, and 119 in the trial court's findings of fact and conclusions of law. These findings deal with the sufficiency of evidence, and we do not wish to prolong this opinion by any detailed discussion of that issue. We have reviewed the findings and conclude that they are correct and constitute a second basis on which to deny appellant's setoff request.

Affirmed.