IN THE SUPREME COURT OF NORTH CAROLINA

No.160A19

Filed 28 February 2020

VIZANT TECHNOLOGIES, LLC

v.

YRC WORLDWIDE, INC.

Appeal pursuant to N.C.G.S. § 7A-27(a)(3) from an order and opinion on defendant's cross-motion for summary judgment entered on 15 November 2018 by Judge Louis A. Bledsoe III, Chief Special Superior Court Judge for Complex Business Cases, in Superior Court, Mecklenburg County, after the case was designated a complex business case by the Chief Justice pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts. Heard in the Supreme Court on 22 November 2019 in session in the Johnston County Courthouse in the City of Smithfield pursuant to section 18B.8 of Chapter 57 of the 2017 North Carolina Session Laws.

*Lincoln Derr PLLC, by Sara R. Lincoln, for plaintiff-appellant.*

*Strauch Green & Mistretta, P.C., by Jack M. Strauch and Jessie C. Fontenot Jr., for defendant-appellee.*

PER CURIAM.

AFFIRMED.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

VIZANT TECHNOLOGIES, LLC,

          Plaintiff,

v.

YRC WORLDWIDE INC.,

          Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 20654

**FURTHER ORDER AND OPINION ON DEFENDANT YRC WORLDWIDE INC.'S CROSS MOTION FOR SUMMARY JUDGMENT**[1]

1.    **THIS MATTER** is before the Court upon Defendant YRC Worldwide Inc.'s ("YRC") Cross Motion for Summary Judgment (the "Summary Judgment Motion") in the above-captioned case.

2.    Having considered the Summary Judgment Motion, the original briefs in support of and in opposition to the motion, the arguments of counsel at the May 23, 2018 hearing on the motion, the supplemental briefs submitted by the parties in support of and in opposition to the motion, and other appropriate matters of record, the Court hereby concludes that YRC's Summary Judgment Motion should be **GRANTED in part** and **DENIED in part** as set forth herein.

---

[1] Recognizing that this Order and Opinion cites and discusses the subject matter of documents that the Court has previously allowed to remain filed under seal in this case, the Court elected to file this Further Order and Opinion on Defendant YRC Worldwide Inc.'s Cross Motion for Summary Judgment under seal on November 15, 2018. The Court permitted the parties an opportunity to advise whether the Order and Opinion contained confidential information that either side contended should be redacted from a public version of this document. On November 15, 2018, both Plaintiff and Defendant advised the Court that no redactions are necessary. Accordingly, the Court removes the "filed under seal" designation and files this Order and Opinion, without redactions, as a matter of public record.

*Lincoln Derr PLLC, by Sara R. Lincoln and Kevin L. Pratt, for Plaintiff Vizant Technologies, LLC.*

*Strauch Green & Mistretta, P.C., by Jack M. Strauch and Jessie Charles Fontenot, for Defendant YRC Worldwide Inc.*

Bledsoe, Chief Judge.

I.

BACKGROUND

3. The Court has previously discussed the factual and procedural history of this action in its June 26, 2018 Order and Opinion, as reported at *Vizant Technologies, LLC v. YRC Worldwide Inc.*, 2018 NCBC LEXIS 65 (N.C. Super. Ct. June 26, 2018). Consequently, this Order and Opinion revisits only those facts that are relevant to the Court's decision herein. The details recited are not findings of fact but a summary "of material facts which . . . are not at issue[.]" *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 165 (1975).

A.  Factual Summary

4. This action arises out of an alleged breach of a Professional Services Agreement (the "PSA") between Plaintiff Vizant Technologies, LLC ("Vizant") and YRC. (*See* Pl.'s Mem. L. Supp. Mot. Summ. J. Ex. 2, at 5 [hereinafter "PSA"], ECF No. 84.3.)

5. YRC—the parent entity of several freight companies that operate throughout North America—has a large number of customers who pay for shipping services by credit card. (Def.'s Br. Supp. Mot. Summ. J. 3, ECF No. 88.) When one of its customers pays using a credit card, YRC pays a credit card processing fee. (Def.'s

Br. Supp. Mot. Summ. J. 3.) YRC incurs substantial costs in credit card fees each year due to the number of customers that it serves and the number of orders that it fills. (Def.'s Br. Supp. Mot. Summ. J. 3.) At all times relevant to this lawsuit, YRC has sought to reduce these costs. (Whitsel Dep. 29:8–23, ECF No. 96.)

6. Vizant holds itself out as a consultant that can help clients reduce costs associated with financial payments. (*See* Br. Supp. Def.'s Mot. Summ. J. Ex. X, ECF No. 133.) Vizant approached YRC in mid-2014 to offer its services, and after a series of negotiations, the two entities executed the PSA. (PSA 5.) By the terms of the PSA, Vizant agreed to "perform an evaluation, assessment and customized analytical review" of the "Financial Payments" YRC received and "identify, indicate and quantify specific and actionable strategies and solutions" that would reduce YRC's costs associated with those payments. (PSA § 2.) In return, YRC agreed to pay Vizant a percentage of YRC's savings resulting from the strategies and solutions identified by Vizant. (PSA § 10.)

7. Under the terms of the PSA, Vizant's fee was calculated by comparing YRC's "Pre-Agreement Financial Payment Costs" with YRC's "Post-Agreement Financial Payment Costs." (PSA § 8.) If the post-agreement costs were less than the pre-agreement costs, YRC would pay Vizant a percentage of the difference. (PSA § 8.) The PSA defined "Post-Agreement Financial Payment Costs" as the Financial Payment Costs YRC incurred "as a result of the strategies and solutions that [were] identified and recommended by Vizant in performance of its professional services[.]" (PSA § 6.)

8. On July 9, 2015, after completing an initial assessment of YRC, Vizant personnel attempted to present an in-person report on Vizant's initial recommendations to YRC management. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *6. Two of these recommendations included charging an account management fee for credit card transactions and convincing customers to switch from paying by credit card to paying by Automated Clearing House ("ACH") batch payments. *Id.* at *6, *23.

9. Minutes into the presentation, YRC's management stopped Vizant's employees and reminded them that YRC was already considering some of the proposed measures for lowering credit card costs. (Lopez Aff. ¶ 7, ECF No. 101.) When YRC asked if Vizant believed it was entitled to a fee for savings resulting from these measures, one of Vizant's representatives responded, "Yes." (Wilson Dep. 83:5–16, ECF No. 95; Lopez Aff. ¶ 7.) YRC then ended the meeting. (Wilson Dep. 271:11–16.) Soon thereafter, Vizant sent hard-copy and electronic versions of its Report to YRC. (Christiansen Dep. 30:1–31:25, ECF No. 122.) YRC sent Vizant a written notice of termination two months later. (Pl.'s Mem. L. Supp. Mot. Summ. J. Ex. 28, at 1, ECF No. 84.29.)

B. Procedural History

10. Vizant seeks declaratory and injunctive relief against YRC as well as damages for breach of the PSA. As part of its claimed damages, Vizant contends that it is owed outstanding fees for savings that YRC allegedly realized through successful efforts to convince customers to pay using ACH rather than credit cards (Vizant's "ACH Damages"). *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *23.

11.     On January 18, 2018, Vizant filed a motion for summary judgment. On January 19, 2018, YRC filed its cross motion for summary judgment, requesting that the Court grant summary judgment "as to [P]laintiff's claims for breach of contract." (Def.'s Mot. Summ. J. 1, ECF No. 87.) In briefing and at oral argument, each side presented the Court with its proposed interpretation of the PSA's provisions, each contending that its respective interpretation required summary judgment in its favor.

12.     Vizant contended that the PSA requires YRC to pay a fee to Vizant because YRC has realized savings as a result of the strategies and solutions identified in Vizant's report. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *9. Under Vizant's reading of the PSA, it does not matter whether Vizant's services actually caused YRC to implement cost-saving measures or whether YRC implemented those measures of its own accord—if Vizant identified one of the solutions that proved beneficial to YRC, Vizant argues it is owed a fee. *Id.*

13.     YRC, on the other hand, asserted that the PSA only requires YRC to pay Vizant if Vizant's suggestions actually caused YRC to change business practices and realize savings. *Id.* at *10. YRC denied that it implemented any strategies based on the information in Vizant's report or presentation and thus argued that it does not owe Vizant any fee. *Id.*

14.     YRC also argued that Vizant was unable to provide sufficient evidence to support its claim for ACH damages. (Def.'s Br. Supp. Mot. Summ. J. 32–33.) In particular, YRC attacked the opinions offered by one of Vizant's experts, Scott Emmanuel ("Emmanuel"), who calculated Vizant's claimed damages. *Vizant Techs.,*

*LLC*, 2018 NCBC LEXIS 65, at \*23. By way of a post-discovery motion to strike, YRC asked the Court to strike Emmanuel's opinions on Vizant's claimed ACH Damages, contending that those opinions were speculative and unreliable. *Id.* In connection with its Summary Judgment Motion, YRC argued that Vizant's failure to put forward reliable evidence of ACH Damages required an entry of "judgment, as a matter of law, in YRC's favor." (Def.'s Br. Supp. Mot. Summ. J. 33.)

15. In an Opinion dated June 26, 2018, the Court made several conclusions as to the parties' summary judgment motions. First, the Court concluded that a genuine issue of material fact remained as to the interpretation of the PSA's fees provision that precluded the Court from entering summary judgment on that issue. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at \*18. Second, the Court concluded that even if YRC's interpretation of the PSA was required as a matter of law, Vizant had presented circumstantial evidence sufficient to create a question of fact as to whether YRC implemented the strategies found in Vizant's report, i.e., evidence of a sharper decline in credit card payments in the year following Vizant's report which might support Vizant's contention that YRC used the suggestions in the report. *Id.* at \*19. Third, the Court concluded that questions of fact remained as to YRC's obligations to provide Vizant with certain financial data under the PSA. *Id.* at \*21–22. In connection with YRC's motion to strike, the Court also concluded that Emmanuel's opinions were speculative and unreliable. *Id.* at \*30. The Court then denied both sides' summary judgment motions and struck Emmanuel's opinions as to Vizant's ACH Damages. *Id.* at \*30–31. The Court did not address YRC's argument that

summary judgment should be granted in its favor due to Vizant's inability to present reliable evidence of ACH Damages and made no conclusions as to the sufficiency of Vizant's evidence concerning those damages.

16. On August 6, 2018, YRC filed a motion under Rule 54(b) of the North Carolina Rules of Civil Procedure asking the Court to reconsider its June 26 Opinion. YRC asserted that the Court did not consider YRC's request for partial summary judgment as to ACH Damages and argued that the Court's decision to strike Emmanuel's opinions as to ACH Damages and Vizant's failure to offer other reliable evidence of such damages required that summary judgment be entered in YRC's favor as to that aspect of Vizant's claim.

17. Vizant argued against further consideration of its claimed ACH Damages at summary judgment. Both sides submitted briefs on YRC's motion for reconsideration, and the Court held a hearing on the matter on August 30, 2018.

18. On September 6, 2018, the Court entered an order on YRC's motion for reconsideration. The Court concluded that it was "clear that the issue of summary judgment as to Vizant's ACH Damages was properly raised and before the Court" at summary judgment and that "the Court did not address the sufficiency of Vizant's evidence as to the ACH Damages portion of Vizant's breach of contract claim or expressly consider YRC's request for summary judgment on that issue." (Order Def.'s Mot. Reconsideration ¶ 9, ECF No. 205.) Consequently, the Court concluded that YRC's motion was not a motion for reconsideration but a request that the Court

decide an issue raised under Rule 56 but left unaddressed by the Court's prior decision. (Order Def.'s Mot. Reconsideration ¶ 9.)

19. Further, to the extent the Court's previous blanket denial of YRC's Summary Judgment Motion "with regard to Plaintiff's breach of contract claim," *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *31, could be read as a ruling on YRC's request for summary judgment on the ACH Damages issue, the Court noted that North Carolina case law clearly "indicates that a trial court judge has the authority to reconsider his or her own summary judgment ruling," (Order Def.'s Mot. Reconsideration ¶ 10); *Levin v. Jacobson*, 2016 NCBC LEXIS 66, at *5 (N.C. Super. Ct. Aug. 25, 2016); *see Miller v. Miller*, 34 N.C. App. 209, 212, 237 S.E.2d 552, 555 (1977) ("An order denying summary judgment is not *res judicata* and a judge is clearly within his rights in vacating such denial."); *see also Carr v. Great Lakes Carbon Corp.*, 49 N.C. App. 631, 635, 272 S.E.2d 374, 377 (1980) ("*Miller* presented the question whether a judge who rules on a motion for summary judgment may thereafter strike the order, rehear the motion for summary judgment, and allow the motion. Such procedure does not involve one judge overruling another, and is proper under Rule 60."). The Court therefore vacated its previous denial of YRC's Summary Judgment Motion to the extent the Court's decision could be read as denying YRC's request for summary judgment as to ACH Damages. (Order Def.'s Mot. Reconsideration ¶ 10.)

20. The Court allowed Vizant a period to supplement the record before the Court and provide additional briefing as to the sufficiency of Vizant's ACH Damages at

summary judgment. YRC was given an opportunity to respond to Vizant's supplemental filings. The Court reserved its right to decide whether to hold a further hearing on YRC's Summary Judgment Motion.

21. Vizant and YRC both submitted supplemental briefs and exhibits to the Court concerning Vizant's ACH Damages. The issue is ripe for resolution, and the Court elects, under the discretion afforded to it by Rule 7.4 of the General Rules of Practice and Procedure for the North Carolina Business Court, to decide this matter without a hearing.

II.

LEGAL STANDARD

22. Under Rule 56 of the North Carolina Rules of Civil Procedure, summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . any party is entitled to . . . judgment as a matter of law." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353 (2009) (quoting N.C. R. Civ. P. 56(c)). A fact is material if it "would constitute or would irrevocably establish any material element of a claim or defense." *Abner Corp. v. City Roofing & Sheetmetal Co.*, 73 N.C. App. 470, 472, 326 S.E.2d 632, 633 (1985). "[A] genuine issue is one which can be maintained by substantial evidence." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *DeWitt v.*

*Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal citations omitted).

23. "The party moving for summary judgment has the burden of showing that there is no triable issue of material fact." *Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997). That burden may be met "by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). If the moving party makes this required showing, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). All evidence is viewed in the light most favorable to the nonmoving party. *DeWitt*, 355 N.C. at 682, 565 S.E.2d at 146.

III.

ANALYSIS

24. In light of the Court's decision to strike Vizant's expert's opinions on ACH Damages, YRC contends that Vizant is unable to forecast evidence from which a factfinder could calculate Vizant's ACH Damages with reasonable certainty. Because Vizant cannot produce evidence to support this element of its breach of contract claim, YRC argues that the Court should grant partial summary judgment in YRC's favor on the issue of ACH Damages.

25.    As a preliminary issue, the Court first addresses what choice of law applies to Vizant's claim.  As a general rule, North Carolina courts will give a contractual choice of law provision "effect unless the chosen state has no substantial connection to the transaction and there is no other reasonable basis for the parties' choice, or the law of the chosen state violates a fundamental public policy of North Carolina." *Recurrent Energy Dev. Holdings, LLC v. SunEnergy1, LLC*, 2017 NCBC LEXIS 18, at *21–22 (N.C. Super. Ct. Mar. 7, 2017) (citing *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 642–43, 574 S.E.2d 31, 33–34 (2002)).  The parties here have expressly agreed—and neither has since disputed—that Kansas law shall control "any controversy, dispute, or claim arising out of or related to" the PSA.  (PSA § 19.)  Thus, Kansas law governs Vizant's breach of contract claim.  *See Bayer CropScience LP v. Chemtura Corp.*, 2012 NCBC LEXIS 43, at *16 (N.C. Super. Ct. July 13, 2012).

26.    In Kansas, the elements of a breach of contract claim are "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). To satisfy the damages element of the claim, a party "must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach." *Venable v. Imp. Volkswagen, Inc.*, 519 P.2d 667, 674 (Kan. 1974).  "A party is not entitled to recover damages not the

proximate result of the breach of contract and those which are remote, contingent, and speculative in character." *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1228 (Kan. 2005) (internal quotation marks omitted). Consequently, the Supreme Court of Kansas has stated that "[i]n order for the evidence to be sufficient to warrant recovery of damages [for breach of contract] there must be some reasonable basis for computation which will enable the jury to arrive at an approximate estimate thereof." *Venable*, 519 P.2d at 674.

27. Vizant presents three arguments in opposition to YRC's request for partial summary judgment. First, Vizant argues that it has presented sufficient evidence to raise a genuine issue of material fact as to whether YRC implemented a strategy of switching customers from credit card to ACH and achieved savings as a result of that strategy. Second, Vizant argues that, even in the absence of expert testimony on the subject, it has provided sufficient evidence from which a jury could arrive at an approximate estimate of the claimed ACH Damages. Third, Vizant contends that, at the very least, it has provided the best evidence it could under the circumstances and that it should not be penalized for evidentiary deficiencies caused by YRC. The Court will address YRC's request for partial summary judgment by addressing each of these counterarguments in turn.

A. Vizant's Evidence that YRC Implemented Identified Strategies

28. Vizant's first argument in its supplemental opposition brief effectively revisits the Court's previous decision. There, the Court determined that Vizant's forecast evidence, "[w]hile circumstantial," created an issue of fact as to whether YRC

implemented the strategies identified in Vizant's report and achieved savings as a result. *Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *19. Thus, in contending that it has presented enough evidence to raise a genuine issue of material fact as to whether YRC encouraged customers to switch to ACH, Vizant argues an already decided issue that YRC's request for partial summary judgment does not seek to revisit.

29. Instead, YRC's request for partial summary judgment challenges the adequacy of the evidence Vizant has put forward to show the amount of ACH Damages Vizant claims. The issue before the Court now is thus not whether Vizant can prove savings were achieved, or even whether Vizant can prove how the savings were achieved, but rather whether Vizant can sufficiently show the amount of savings YRC achieved by convincing customers to switch to ACH. In short, the Court must decide whether Vizant's evidence provides a reasonable basis for a factfinder to arrive at an approximation of Vizant's ACH damages. *See Venable*, 519 P.2d at 674. The Court thus turns to address that issue.

B.   Vizant's Evidence of ACH Damages

30. As to its ACH Damages evidence, Vizant argues that "an issue of material fact remains as to whether YRC's cost reductions must be causally linked to Vizant's recommendations in order for Vizant to recoup its fee under the PSA." (Pl.'s Supplemental Br. Opp'n YRC's Mot. Summ. J. 11 [hereinafter "Pl.'s Supplemental Br."], ECF No. 209.) "Thus," Vizant continues, "all Vizant has to show is that it did not get paid under . . . the still-to-be-interpreted terms of the PSA to demonstrate

damages for purposes of summary judgment." (Pl.'s Supplemental Br. 11.) This assertion does not align with the Court's previous ruling or the law applicable to Vizant's claim.

### 1. The Required Causal Connection Between YRC's ACH Savings and Vizant's ACH Damages

31. In its June 26 Opinion, the Court held that an issue of fact remained as to whether Vizant's right to a fee under the PSA was contingent upon Vizant's report or recommendations causing YRC to implement the alleged program of encouraging customers to switch from credit card payments to ACH. *See Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *18. In essence, the Court found the evidence in dispute as to whether (i) the parties intended Vizant to recoup a fee for simply identifying and recommending strategies that led to savings, including strategies YRC decided to implement independently or had already implemented, or (ii) the parties intended Vizant to recoup a fee only in the event Vizant identified and recommended a new strategy to YRC and YRC ended up implementing that strategy because of Vizant's recommendation. *Id.* at *17–18. The Court concluded that the PSA was ambiguous on this issue and that evidence in the record pointed to both interpretations being reasonable. *Id.* at *14–15, *17–18.

32. In either event, the Court also determined that the PSA required a causal connection between a strategy of convincing customers to switch to ACH and YRC's savings that would be used to calculate Vizant's fee. *Id.* at *26. The Court noted that Vizant's fee was not meant to be based on any "broad, kitchen-sink savings realized after the execution of the PSA," but only on those savings YRC achieved as the result

of a strategy identified by Vizant. *Id.* Thus, Vizant may be entitled to a fee based on savings resulting from customers switching from credit card to ACH at YRC's prompting, but Vizant is not entitled to a fee simply because YRC had fewer credit-card-related costs after the PSA was executed. *See id.*

33.  In sum, contrary to Vizant's current argument, Vizant must do more than show it was not paid under the PSA to recover ACH Damages. Vizant must also (i) prove that YRC achieved savings by convincing its customers to switch from credit card to ACH, *id.*, and (ii) show "with reasonable certainty the amount of damage[s]" caused by any outstanding fee linked to those savings, *Venable*, 519 P.2d at 674. The Court has concluded that Vizant has forecast adequate evidence to survive summary judgment on the first of these points, *see Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *19, but must now determine whether the same is true of the second.

### 2. The Sufficiency of Vizant's Forecast ACH Damages Evidence

34.  YRC asserts that Vizant has not presented evidence showing the amount of cost savings YRC achieved as the result of any "switch-to-ACH" strategy. Because the source of Vizant's ACH Damages is the alleged unpaid fee tied to such savings, YRC argues Vizant cannot prove its claimed ACH Damages with any reasonable certainty. While YRC does not appear to contest that some evidence in the record shows YRC experienced a decline in the number of customers paying with credit cards following the PSA's execution, YRC contends that Vizant has failed to forecast any evidence that would allow a reasonable factfinder to determine what portion of that overall decline resulted from YRC's efforts to cause customers to switch to ACH. YRC

also argues that Vizant's evidence of general shifts in payment methods cannot account for any incentives YRC paid customers to encourage their switch to ACH, another factor YRC asserts is critical in determining the amount of money, if any, YRC actually saved from customers switching.

35.     Before post-discovery dispositive motions practice in this case, Vizant's most succinct evidence addressing its claimed ACH Damages was Emmanuel's expert opinions. The Court struck Emmanuel's opinions related to ACH Damages after concluding that they were based on insufficient data, were not the product of a reliable method, and were not the product of a method that was reliably applied to the facts of the case. *Id.* at \*30. The Court's conclusions were based, in part, on Emmanuel's own deposition testimony, wherein he admitted several ways his calculations could not accurately show the amount YRC saved by customers moving from credit card to ACH:

> Q: In order to calculate how much YRC saved by customers moving from credit card to ACH, you certainly ought to account for the amount that YRC paid its customers in incentives to make that move from credit card to ACH, right?
>
> A: Correct.
>
> Q: And you have not done that, have you?
>
> A: Correct.

(Emmanuel Dep. 123:24–124:6, ECF No. 90.10.)

> Q: And you have no idea whether or not what you say was a drop in Visa, MasterCard or Discover payments had anything to do with YRC encouraging a customer to pay by ACH instead of using one of those credit cards, right?
>
> A: Correct.

Q: You have no idea whether those were the simple result of market forces where customers change their own . . . payment type or leave and go to a different trucking company, right?

. . . .

A: Correct.

. . . .

Q: And you don't know whether that reduction was caused by YRC implementing some recommendation that Vizant put in its report, right?

A: Correct.

Q: All you know is that your math tells you that there was some reduction, and who in the world knows why it happened, right?

A: Correct.

(Emmanuel Dep. 111:14–112:1, 137:1–11.)

36.     In short, Emmanuel did not attempt to discern what portion of the decrease in YRC's credit-card-related costs was due to customers switching to ACH; he simply assumed that each dollar saved should be attributed to a customer switching. The Court therefore concluded that Emmanuel's opinions on ACH Damages were unreliable under North Carolina Rule of Evidence 702(a) and should be struck:

> Under Emmanuel's calculation, as described by his own testimony, true savings caused by YRC's customers switching to ACH payments and other factors leading to a reduction in customers paying with credit cards—for example, a reduction in credit card payments due to lost business—would all have been counted as savings for which YRC owed Vizant a fee. . . . This calculation (i) does not abide by the formula in the PSA, which requires a comparison of pre-agreement costs to post-agreement costs resulting from strategies identified by Vizant, (ii) rests on unjustifiable assumptions, and

(iii) could mislead a jury into awarding Vizant damages for what was in reality a loss in YRC's business.

*Vizant Techs., LLC*, 2018 NCBC LEXIS 65, at *29.

37.     The Court's previous analysis of Emmanuel's ACH Damages opinions is pertinent to the matter *sub judice* because Vizant's remaining evidence of ACH Damages suffers from the same flaws.  All of Vizant's evidence shows nothing more than a net decrease in credit-card-related costs in the months and years following the PSA and a net trend towards increasing ACH payments.  Simply put, Vizant has no evidence that can reasonably approximate what, if any, reduction in YRC's credit card costs is attributable to encouraging customers to switch to ACH.

38.     For example, the previously presented chart appearing at the top of page seven of Vizant's supplemental brief (the contents of which remain under seal) shows a general shift towards a greater number of ACH payments and fewer credit card payments during the years 2014–2017, but the total number of each kind of transaction oscillates considerably over that time-span.  (Pl.'s Supplemental Br. 7.) The chart provides a factfinder with nothing more than Emmanuel's previously stricken opinions and invites jurors to engage in the same speculative analysis by attempting to discern, without any identifiable framework, what percentage of the shown changes occurred due to YRC encouraging customers to switch payment methods.

39.     Vizant's supplementation of the record provides no additional evidence to remedy this problem.  Along with its supplemental brief, Vizant submitted twelve YRC-produced spreadsheets in pdf and Excel format ("Exhibits 1–12").  Vizant gives

little explanation to assist the Court in navigating these spreadsheets, but contends that Exhibits 1 and 5 represent "the monetary impact of YRC's 2015 ACH initiative within each of YRC's operating companies," (Pl.'s Supplemental Br. 12), and that Exhibits 4 and 5 show YRC's subsidiaries' revenues by payment type, (Pl.'s Supplemental Br. 14). Vizant asserts that it "can argue that YRC's own evidence [shows] the monetary impact of its ACH initiative . . . within the company" and that this "is a reasonable basis on which to calculate the [ACH Damages] figure." (Pl.'s Supplemental Br. 12.) The Court has reviewed each spreadsheet and disagrees.

40. Exhibits 2 and 3 showcase information on YRC's subsidiaries' top credit card accounts for May 2016 (*See* Pl.'s Supplemental Br. Exs. 2–3, ECF No. 209.1.) These exhibits do not present any information that would aid a jury in determining whether customers switched from credit card to ACH or, if so, why they switched. Exhibits 4 and 5 summarize YRC's revenue and deposits by month from 2013–2017. (*See* Pl.'s Supplemental Br. Exs. 4–5, ECF No. 209.1.) These spreadsheets track the change in deposits by payment type per month for YRC and its subsidiaries, but still provide no explanation for any changes. Exhibit 6 shows the percentage of YRC's total deposits that were attributable to credit cards from 2006–2011. (*See* Pl.'s Supplemental Br. Ex. 6, ECF No. 209.2.) This exhibit provides no explanation for changes in credit card deposits over time and is outside the time-period relevant for this case.

41. Exhibits 7 and 8 show YRC's credit card revenues broken down by major credit card company and report YRC's credit card fees for the years 2010–2014. (*See* Pl.'s Supplemental Br. Exs. 7–8, ECF No. 209.2.) Exhibit 9 reports credit card

revenue per major credit card company for YRC's subsidiaries from October 2015–January 2016. (*See* Pl.'s Supplemental Br. Ex. 9, ECF No. 209.2.) Exhibits 10, 11, and 12 break down credit card revenue for YRC and its subsidiaries by month in 2014, 2016, and 2017 respectively. (*See* Pl.'s Supplemental Br. Exs. 10–12, ECF No. 209.3.) None of these spreadsheets illuminate whether customers switched from credit card payments to ACH or why they switched.

42. Vizant contends that Exhibit 1 to its supplemental brief, an Excel spreadsheet Vizant labeled "ACH Migration Program Impact Sheet," shows the monetary impact of YRC's 2015 "ACH initiative." (Pl.'s Supplemental Br. 12; Index Supp. Materials for Pl.'s Supplemental Br. 1, ECF No. 209.1; Pl.'s Supplemental Br. Ex. 1, ECF No. 209.1.) YRC, however, argues that this representation is false and based solely on Plaintiff's counsel's interpretation of Exhibit 1. According to YRC, Exhibit 1 is actually an unused template created by Abraham Bailin ("Bailin"), the finance manager of one of YRC's subsidiaries. (Bailin Aff. ¶¶ 2, 4, 6, ECF No. 213.2.)

43. In an affidavit submitted to the Court with YRC's supplemental brief, Bailin states that he never labeled Exhibit 1 "ACH Migration Program Impact Spreadsheet" and that Vizant created that title. (Bailin Aff. ¶ 4.) Bailin also states that Vizant's characterization of Exhibit 1 is incorrect. (Bailin Aff. ¶ 5.) Bailin testifies that he created Exhibit 1 in mid-2016 upon YRC's request and that Exhibit 1 "does not provide any information about any actual results of any effort to convince customers to pay by ACH instead of by credit card." (Bailin Aff. ¶ 6.) Instead, according to Bailin's understanding, Exhibit 1 was meant to forecast the financial impact of a

scenario in which YRC "essentially mandate[d] that customers . . . stop paying by credit card." (Bailin Aff. ¶ 11.) Bailin states that upper management rejected that strategy and that, to the best of his knowledge, Exhibit 1 was never used to forecast the financial impact of any program that was actually implemented. (Bailin Aff. ¶ 11.)

44. According to Bailin—with the exception of the revenue and accounts receivable figures from May 2015–April 2016; the April and May 2016 top credit card account figures; credit card revenue figures from January 2015–June 2016; and the payment terms YRC had with certain third-party logistics companies—the entirety of the figures contained in Exhibit 1 are forecast numbers, placeholder variables Bailin created to build the model, or figures the model generated by processing actual figures and placeholder variables. (Bailin Aff. ¶¶ 7, 8 14.) If YRC actually used Exhibit 1, Bailin states, "it would have been up to the user" to input new figures based on known or assumed statistics. (Bailin Aff. ¶¶ 14–16.)

45. The Court has reviewed Exhibit 1's contents and concludes that they corroborate Bailin's affidavit testimony. First of all, Exhibit 1 makes the assumption that 100% of the operating revenue eligible to move from credit card payments to some other form of payment would do so, (Pl.'s Supplemental Br. Ex. 1), an assumption that would not conceivably play out in the real world. Further, while the Court must view the facts on YRC's Summary Judgment Motion in the light most favorable to Vizant, the Court cannot ignore the disparity between YRC's characterization of Exhibit 1, which is supported by an affidavit, and Vizant's

description of Exhibit 1, which is supported by nothing more than counsel's argument in Vizant's supplemental brief. In light of this lack of evidentiary support for Vizant's interpretation of Exhibit 1, the Court concludes that Exhibit 1 does not provide any information from which a factfinder could reasonably approximate Vizant's ACH Damages. *See Cone v. Cone*, 50 N.C. App. 343, 347, 274 S.E.2d 341, 343–44 (1981) ("When a party, in a motion for summary judgment, presents an argument or defense supported by facts which would entitle him to judgment as a matter of law, the party opposing the motion 'must present a forecast of the evidence which will be available for presentation at trial and which will tend to support his claim for relief.'" (quoting *Best v. Perry*, 41 N.C. App. 107, 110, 254 S.E.2d 281, 284 (1979))); *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 161–62 (1976) ("On a motion for summary judgment[,] the court may consider evidence consisting of affidavits, depositions, answers to interrogatories, admissions, documentary materials, facts which are subject to judicial notice, and any other materials which would be admissible in evidence at trial."); *see also Ronald G. Hinson Elec., Inc. v. Union Cty. Bd. of Educ.*, 125 N.C. App. 373, 379, 481 S.E.2d 326, 330 (1997) (noting that unsworn statements by a party's attorney are not considered evidence at trial).

46. The testimony of Patrick Moran ("Moran"), another of Vizant's designated experts, does nothing to remedy the problems with Vizant's evidence. Moran testified that YRC's increase in ACH payments and decrease in credit card payments went against industry trends because market data showed credit card usage increasing. (Moran Dep. 153:1–21, ECF No. 209.5.) Moran also testified that he believed a loss

in business could not account for the total decrease in credit card payments YRC experienced. (Moran Dep. 153:22–154:19.) This evidence goes to whether YRC was encouraging customers to switch to ACH but provides nothing from which a reasonable factfinder could begin to approximate what part of YRC's savings resulted from any such effort.

47. Further, YRC is correct that none of the above-mentioned evidence would allow a jury to "account for the amount that YRC paid its customers in incentives to make that move from credit card to ACH," a consideration that Vizant's own expert agrees is necessary to calculate YRC's savings. (Emmanuel Dep. 123:24–124:6.) None of Vizant's evidence, with the exception of Exhibit 1's placeholder variables, addresses any financial incentives, real or forecast, associated with YRC encouraging customers to switch to ACH. While this aspect of the ACH Damages calculation may be more nuanced than those issues already discussed, it showcases yet another way Vizant's proffered evidence provides no details about what savings YRC actually realized or may have realized as a result of switching customers to ACH.

### 3. Vizant's Contentions of the "Best Evidence Available"

48. Vizant's third and final argument asserts that "[a]ny difficulties in calculating damages from [the submitted] data is a result of the manner [in which] YRC itself maintains the data, not Vizant's failure to bring forth sufficient evidence" and that YRC's inability to track shifts from credit card payments to ACH payments "cannot serve as a basis for granting YRC summary judgment." (Pl.'s Supplemental Br. 15.) To support this assertion that it "should not be penalized" for YRC's failure

to "keep necessary records," (Pl.'s Supplemental Br. 13), Vizant cites *New Dimensions Products, Inc. v. Flambeau Corp.*, 844 P.2d 768 (Kan. Ct. App. 1993). That case, however, is inapposite.

49.    In *New Dimensions*, a defendant with "exclusive control over all the records" useful in calculating damages "consistently denied" that such records existed until the first day of a bench trial. *Id.* at 771, 774. The trial court ordered the records to be produced, allowed the plaintiff to introduce the evidence, and sanctioned the defendant. *Id.* at 771. The evidence finally admitted was imperfect, and the trial court made certain inferences and assumptions in calculating parts of the plaintiff's damages for which no evidence existed. *See id.* at 771–72, 774. The trial court's award was affirmed as an exercise of its equitable power to make the plaintiff whole by resolving the question of damages "on the best evidence available." *Id.* at 771–73; *see also Gillespie v. Seymour*, 823 P.2d 782, 797 (Kan. 1991) ("In assessing damages it is within the discretion of the trial court to apply equitable standards in order that the plaintiff may be made whole.")

50.    In contrast to *New Dimensions*, here there is no evidence YRC failed to keep necessary records or wrongfully refused to produce records to Vizant. YRC's inability to track figures that would easily show Vizant's ACH Damages did not emerge suddenly when the possibility of litigation seemed imminent. Indeed, Vizant's supplemental evidence reveals a conversation taking place months before the companies' relationship fell apart in which YRC personnel discuss their inability to track per-customer credit-card-to-ACH changes. (Pl.'s Supplemental Br. Ex. 24, at 1,

ECF No. 209.4.) The Court will not relieve Vizant of its burden to prove its case simply because YRC did not keep records that may be convenient to proving that case. *Belot v. Unified Sch. Dist. No. 497*, 4 P.3d 626, 629 (Kan. Ct. App. 2000) ("The burden of proving the damages rests on the plaintiff.").

51. Furthermore, YRC is not the only entity with access to data that would have been useful to Vizant in making its damages case. During discovery, YRC produced multiple documents to Vizant listing YRC's top credit card customer accounts at various points in time. (*See* Pl.'s Supplemental Br. Exs. 2, 9.) Each of these customers likely would have possessed data on their methods of paying YRC and would have been the best source for evidence tending to show *why* customers switched from credit card to ACH, i.e., whether they did so because of a YRC strategy or because of convenience, market forces, changes in credit card benefits, or other factors. Despite this, the record before the Court does not show any attempt by Vizant to obtain discovery from these nonparties. The Court does not believe Vizant is entitled to an equitable easing of its burden of proof in such circumstances. *See New Dimensions*, 884 P.2d at 774 (stating that evidence is sufficient where it "shows the extent of the damages as a matter of just and reasonable inference," but reaffirming that "damages may not be determined by mere speculation or guess" (quoting *Vanguard Ins. Co. v. Connett*, 270 F.2d 868, 870 (10th Cir. 1959))).

52. In sum, none of the evidence Vizant presents to the Court would "enable the jury to arrive at an approximate estimate" of Vizant's ACH Damages. *See Venable*, 519 P.2d at 674. At most, the forecast evidence shows that YRC's credit card revenue

and credit-card-related costs decreased in the months following the execution of the PSA and that YRC's ACH revenue increased. While Vizant argues that "these records are sufficient to allow a jury to arrive at a reasonable calculation of Vizant's damages, including the ACH subcategory," (Pl.'s Supplemental Br. 15), without any evidence allowing a factfinder to even begin to discern what portion of YRC's reduced credit card costs may have been tied to YRC's efforts to switch customers to paying by ACH, presenting the current record to a jury and asking it to approximate the claimed ACH Damages would be asking jurors to engage in the same speculation that formed the basis for Emmanuel's unreliable opinions. Kansas law does not allow for Vizant to recover damages on such evidence. *See Reliance Ins. Co.*, 107 P.3d at 1228 ("A party is not entitled to recover damages not the proximate result of the breach of contract and those which are remote, contingent, and speculative in character." (internal quotation marks omitted)).[2]

53. In light of the above, the Court concludes that YRC has met its burden on summary judgment by showing that Vizant cannot produce evidence to support its claimed ACH Damages. Vizant has failed to respond with a forecast of evidence demonstrating specific facts to prove this element of its breach of contract claim at trial. The Court therefore concludes that summary judgment should be granted in

---

[2] The Court notes that its conclusion herein would be identical under North Carolina law, which provides that "the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 547–48, 356 S.E.2d 578, 586 (1987).

YRC's favor as to Vizant's claimed ACH Damages. *See Gaunt*, 139 N.C. App. at 784–85, 534 S.E.2d at 664.

IV.

CONCLUSION

54.    **WHEREFORE**, the Court hereby **AMENDS** its June 26, 2018 Order and Opinion on Cross Motions for Summary Judgment and Defendant's Motion to Strike and **ORDERS** as follows:

a.    YRC's Cross Motion for Summary Judgment is **GRANTED in part**. Vizant shall not recover damages relating to savings YRC purportedly achieved as a result of any strategy aimed at causing customers to switch from credit card payments to ACH payments.

b.    YRC's Cross Motion for Summary Judgment is otherwise **DENIED** with regard to Vizant's breach of contract claim.

c.    Except as otherwise stated herein, the Court's decisions in its June 26, 2018 Order and Opinion are unaffected by this ruling.

**SO ORDERED**, this the 15th day of November, 2018.[3]

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[3] This Order and Opinion was originally filed under seal on November 15, 2018. This public version of the Order and Opinion is being filed on November 19, 2018. Because this public version of the Order and Opinion does not contain any substantive changes from the version filed under seal as to constitute an amendment, and to avoid confusion in the event of an appeal, the Court has elected to state the filing date of the public version of the Order and Opinion as November 15, 2018.